# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNIE HARRY BAILEY,<br>　　　　Plaintiff,<br>　　v.<br>JAMES DOUGLAS NURMI,<br>　　　　Defendant. | Case No. 3:19-cv-07669-WHO<br><br>**ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 2 |

Before me is a motion for a temporary restraining order filed by plaintiff John Harry Bailey against defendant James Nurmi, the former Chief Technology Officer ("CTO") of Thorium Cybersecurity, Bailey's company. Although Nurmi, who apparently resides in Luxembourg, did not appear at the hearing, Bailey has submitted evidence showing that Nurmi has received actual notice of the existence of this case and of the pending motion. Because Bailey has made a showing of irreparable harm and the balance of hardships tips in his favor, I will grant the motion and enjoin Nurmi from accessing, manipulating, altering, or destroying the source code or other confidential information he has allegedly stolen from Thorium's online accounts.

Given that Bailey will have to serve Nurmi utilizing the procedure dictated by The Hague Convention, I will extend the Temporary Restraining Order by fourteen days to the maximum allowed by Federal Rule of Civil Procedure 65(b)(2), twenty eight days. Because Nurmi has not responded to Bailey's motion, he may move to dissolve the Temporary Restraining Order at any time and request the earliest possible hearing date. He should contact my courtroom deputy, Jean Davis, if he wishes to do so.

**BACKGROUND**

**I. FACTUAL HISTORY**

Plaintiff John Bailey is the founder and CEO of Thorium Cybersecurity. Complaint ("Compl.") [Dkt. No. 1] ¶ 1. Its flagship product is Ambitrace, which Bailey describes as "a robust enterprise data discovery solution that helps to track sensitive data across all installed endpoints[1] inside and outside an organization." *Id.* According to the complaint, the enterprise endpoint security market is expected "to jump to $50 Billion dollars by 2022 in revenue for cybersecurity endpoint providers." *Id.*

Nurmi was hired on or about June 20, 2018, and he later became CTO. *Id.* ¶ 3. Bailey dismissed Nurmi on July 19, 2019 because of his dishonesty about an outstanding legal issue and his struggles with substance abuse.[2] *Id.* Ex. A.[3] In addition, Nurmi was failing to perform his duties as CTO, and was staying up all night drinking and appearing disheveled at client meeting. *See id.* Exs. A, E.

Just before dismissing Nurmi, Bailey learned that Nurmi had allowed the company's domain names—thoriumcyber.com, ambitrace.com, ambitrace.net—to expire so that he could acquire them himself. *Id.* ¶¶ 3, 4. In response to Bailey's request about the domains, Amazon Web Services indicated that it could not transfer ownership of ambitrace.com and ambitrace.net without a court order. *Id.* Ex. B.

At some point after his dismissal, Nurmi regained entry to the company's systems, took control of them, and locked Bailey out. *Id.* ¶ 8. On July 15, 2019, Nurmi sent a message via Signal[4] that he had sold Bailey's intellectual property (IP) and ceased operations of the company in the European Union. *Id.* ¶ 9, Ex. I.

On July 26, 2019, Bailey received an email from Nurmi's lawyer. *Id.* ¶ 6; *see id.* Ex. E.

---

[1] "Endpoints" include desktops, file servers, laptops, tablets, and cell phones. Compl. ¶ 1.

[2] According to Bailey, Nurmi refuses to come to the United States because he is avoiding a summons in a wrongful death lawsuit. Compl. Ex. A; Exhibit List [Dkt. No. 11] ECF 1.

[3] All of the exhibits attached to the complaint are also attached to the motion for a TRO.

[4] Signal is an encrypted messaging application. Exhibit List 2.

The email attached bylaws and a certificate of incorporation for a company called Ambitrace. *Id.* According to Bailey, those documents are associated with a fake company Nurmi created by forging Bailey's signature. *See id.* ¶ 6, Ex. F; Exhibit List 3. The email asserted that Nurmi is a controlling shareholder, has the power to terminate Bailey's role, and has a right to access the accounts. *See id.* Ex. E.

## II. PROCEDURAL HISTORY

Bailey initiated this case on November 21, 2019 alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502. He moved for a TRO the same day. Motion for a Temporary Restraining Order ("Mot.") [Dkt. No. 2]. On November 25, I ordered Bailey to attempt service on Nurmi and to provide both Nurmi and the attorney with copies of his motion.[5] Dkt. No. 8. I scheduled a hearing for December 3, 2019. *Id.*

Bailey appeared at the hearing and detailed his attempts to reach Nurmi and his attorney. He sent summonses to Nurmi's addresses in San Francisco and in Luxembourg.[6] He contacted Nurmi's attorney's law firm and learned that (i) that attorney has left the firm, and (ii) the firm is not representing Nurmi with regard to this lawsuit. Exhibit List 2. It referred him to another attorney, who also is not representing Nurmi in this case. Bailey shared all case documents with Nurmi's Ambitrace and personal email addresses via Google documents. *Id.* Finally, he sent a copy of the summons via Signal, which indicated that Nurmi had opened the message. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. Fed. R. Civ. P. 65. The standard for both forms of relief is the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance

---

[5] I also granted Bailey's motion to proceed in forma pauperis.
[6] According to Bailey, Nurmi still lives in the Luxembourg residence that is leased in Bailey's name. Exhibit List 1.

3

1  of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v.*
2  *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary
3  remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."
4  *Id.* at 22. The Ninth Circuit has held that "'serious questions going to the merits' and a hardship
5  balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the
6  other two elements of the *Winter* test are also met." *See Alliance for the Wild Rockies v. Cottrell*,
7  632 F.3d 1127, 1132 (9th Cir. 2011).

**DISCUSSION**

**I. MOTION FOR A TEMPORARY RESTRAINING ORDER**

I will exercise my discretion to grant Bailey's motion for a temporary restraining order. *Smart Techs. ULC v. Rapt Touch Ireland Ltd*, 197 F. Supp. 3d 1204 (N.D. Cal. 2016) ("A federal court's issuance of emergency relief is a matter of discretion."). First I note that the evidence shows Nurmi had actual notice of this case and the pending motion at the time of the December 3, 2019 hearing. *See generally* Exhibit List. Neither he nor an attorney has appeared or made any filings in this case.

Various filings from Bailey detail the irreparable harm he will experience without court intervention. Bailey and other employees of Thorium are currently locked out of the company's accounts, including Google Apps, GitHub, and Amazon Web Services, which contain confidential intellectual property. Mot. 2, 4. At the hearing, Bailey cited to an October 4 email in which Nurmi admitted that he had set up a different entity and intended to import Thorium's code into that entity. Bailey believes that Nurmi seeks to "damage, corrupt or destroy [the company's] intellectual property." *Id.* at 2. These actions will cause Bailey irreparable harm because his business depends on access to data: "Ambitrace cannot plausibly maintain goodwill when it cannot provide services to the customers who already [] signed letters of intent . . . via our vendor client research partner in Luxembourg, EU." *Id.* at 5.

These harms make emergency relief appropriate. "The threat of being driven out of business is sufficient to establish irreparable harm." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). The potential to lose "newfound customers

and accompanying goodwill and revenue" also supports a finding of irreparable harm. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

As for the remaining factors, Bailey has raised serious questions going to the merits of his claims under both the federal Computer Fraud and Abuse Act and California's Comprehensive Computer Data Access and Fraud Act. *See* Mot. 5; *Cottrell*, 632 F.3d at 1132. The balance of hardships tips in Bailey's favor, and the public interest further favors temporary relief.

## II.  SERVICE IN LUXEMBOURG

Bailey has made efforts to make Nurmi aware of his initiation of this case and his motion for a TRO, but actual service in this case will require more. The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("the Hague Convention") is a multinational treaty that governs service abroad. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Id.* Once that authority has received a proper request, it serves the documents and provides a certificate of service. *Id.* at 699. "Fifty-five countries have signed the Hague Convention, including the United States . . . and Luxembourg." *Gidding v. Anderson*, No. C 07-04755 JSW, 2008 WL 4065814, at *3 (N.D. Cal. Aug. 27, 2008).

According to Bailey, Nurmi lives in Luxembourg. The service attempts he has outlined are not sufficient to satisfy the Hague Convention. Article 5 Service, for example, requires that documents be translated into French or German, that certain forms be filled out, and that all of this information be sent to Le Procureur général d'Etat. Proper service under the Hague Convention will be necessary before Bailey can obtain relief beyond the temporary measure afforded herein. *See* Fed. R. Civ. P. 65(b)(2) (limiting the effect of a TRO to a maximum of 28 days if good cause is shown why an extension is necessary14 days).[7]

## CONCLUSION

Bailey's motion for a Temporary Restraining Order is GRANTED. Nurmi is hereby

---

[7] Good cause for the extension exists given the complexity of service under The Hague Convention and Bailey's efforts to provide Nurmi with notice of his motion and this proceeding.

5

ENJOINED from accessing, manipulating, altering, or destroying the source code or other confidential information he has allegedly stolen from Thorium's online accounts. This Order will expire in 28 days from the date below.

**IT IS SO ORDERED.**

Dated: December 6, 2019

William H. Orrick
United States District Judge