1  Michael C. Hendershot (State Bar No. 211830)
   mhendershot@jonesday.com
2  Michael A. Lavine (State Bar No. 321727)
   mlavine@jonesday.com
3  Sara K. Tabrizi (State Bar No. 322329)
   stabrizi@jonesday.com
4  D. Cameron Baker (State Bar No. 329123)
   cbaker@jonesday.com
5  JONES DAY
   555 California St. 26th Floor
6  San Francisco, CA  94104
   Telephone No.: (415) 626-3939
7  Facsimile No.: (415) 875-5700

8  Attorneys for Plaintiff
   THORIUM CYBER SECURITY, LLC
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THORIUM CYBER SECURITY, LLC<br><br>  Plaintiff,<br><br>  v.<br><br>JAMES DOUGLAS NURMI,<br><br>  Defendant. | Case No. 3:19-cv-07669-WHO<br><br>**PLAINTIFF THORIUM CYBER SECURITY, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>**Date:** October 06, 2021<br>**Time:** 2:00 p.m.<br>**Judge:** Hon. William Orrick<br>**Courtroom:** 2 |
| JAMES DOUGLAS NURMI,<br><br>  Counterclaim-Plaintiff<br><br>  v.<br><br>THORIUM CYBER SECURITY, LLC<br><br>  Counterclaim-Defendant | |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ............................................................. 2

ARGUMENT ......................................................................................................................... 4

I.    Defendant's Motion Is Procedurally Improper Because It Does Not Comply With the Court's Standing Order ........................................................................................ 4

II.    The Motion is Meritless Because Thorium Did Not Have Control Over the Google Account, Bears No Culpability for Its Closure or Alleged Deletion, and Defendant Has Suffered No Prejudice .............................................................................................. 5

    A.    Thorium Did Not Have Access to or Control Over the Thorium Google Account ....................................................................................................... 6

    B.    Thorium Is Not Culpable for Any Loss of the Thorium Google Account Because Defendant Did Not Disclose the Possibility ............................................ 7

    C.    Defendant Has Suffered No Prejudice Because Defendant Has Access to Relevant Documents and Contemporaneous Email Communications................... 8

CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Bowoto v. Chevron Texaco Corp.*,
   2008 WL 552456 (N.D. Cal. Feb. 27, 2008)................................................................................5

*Brewer v. Quaker State Oil Refining Corp.*,
   72 F. 3d 326 (3rd. Cir. 1995) ......................................................................................................6

*In re Napster, Inc. Copyright Litig.*,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ...............................................................................5, 8, 9

*McKesson Corp. v. Islamic Republic of Iran*,
   185 F.R.D. 70 (D. D.C. 1999).....................................................................................................6

*Wine Education Council v. Arizona Rangers*,
   2021 WL 3550213 (D. Ariz. Aug. 11, 2021)..............................................................................4

**INTRODUCTION**

Plaintiff Thorium Cyber Security, LLC ("Thorium") responds herein to Defendant James Douglas Nurmi's ("Defendant") Motion for Terminating Sanctions for Spoliation of Evidence ("Motion").[1] It is the third improper—and meritless—discovery motion that Defendant has filed.

First, like his two recently-filed discovery motions, the Motion to Compel (ECF No. 76) and the Motion for Protective Order (ECF No. 81), Defendant's Motion is procedurally improper. As has been explained to Defendant on numerous occasions by the by the Court and Thorium, he must follow the Court's Standing Order for Civil Cases ("Standing Order") when submitting discovery disputes. For the third time, Nurmi has failed to do so.

Second, Defendant misrepresents the facts of this case. As Thorium has consistently pled, as the documents show, and as Mr. Bailey attests, Thorium has had no access to the Google account associated with thoriumcyber.com ("Thorium Google Account") since Defendant locked them out in 2019. Defendant, on the other hand, has alleged ownership of the account, has exclusive access to emails addressed to @thoriumcyber.com addresses, and has even produced documents and emails from the Thorium Google Account. As a result, Defendant alone knew that the Thorium Google account was facing closure and deletion, and alone had the ability to access the account to preserve its contents. His attempt to foist this responsibility on Thorium after the closure of the account is backwards and misplaced.[2]

On September 2, 2021, Thorium informed Mr. Nurmi that his motion was improper, and asked him to withdraw the motion so that the parties could file a joint statement per the Court's orders. Mr. Nurmi declined, and stated his motion was not improper because the parties had reached an impasse during the meet and confer process. Thorium reminded Mr. Nurmi that an impasse was only the first step of the process outlined in the Standing Order, but Mr. Nurmi still

---

[1] Thorium believes Defendant's motion to be improper in the first instance. Because the Court has not struck the motion *sua sponte*, as it has done previously in this case, Thorium files this Opposition out of an abundance of caution.

[2] Although Google's notices threaten both closure *and* deletion, the ultimate notice, received by Defendant on July 27, 2021, states only that the Thorium Google Account has been closed and the information contained therein *will* be deleted. Defendant has not produced anything from Google suggesting that the information *has* been deleted.

declined to withdraw the Motion.

## BACKGROUND AND PROCEDURAL HISTORY

On July 19, 2019, Defendant attempted to fire Mr. Bailey. Declaration of John H. Bailey ("Bailey Decl."), Ex. A. On July 28, 2019, after a brief rapprochement, Mr. Nurmi attempted to fire Mr. Bailey again. Bailey Decl., Ex. B. During the second attempt, Mr. Nurmi locked Mr. Bailey out of the all of the Thorium accounts—including the Thorium Google Account. *Id*. Thorium never regained access to the Thorium Google Account. Bailey Decl., ¶ 11.

Instead, the Thorium Google Account remains under the control of Defendant. In a meet and confer, Defendant informed Thorium that: (i) he owned the Thorium Google account; (ii) as Thorium's CTO, he possessed log-in information to the account, had changed that log-in information at least once, had allegedly forgotten that log-in information, and had not tried to regain it; (iii) he controlled and continues to control the Domain Name System (DNS) for thoriumcyber.com ("DNS server"), which allowed and continues to allow him to direct email sent to the thoriumcyber.com addresses wherever he chooses; (iv) he directs all email sent to thoriumcyber.com addresses to a separate mail server; and (v) he monitors emails directed to thoriumcyber.com addresses. Declaration of Michael Lavine ("Lavine Decl."), ¶ 2. An email memorializing that meet and confer was sent to Mr. Nurmi and recounted these admissions. Lavine Decl. Ex. A. Mr. Nurmi has never challenged the accuracy or completeness of that memorialization. Lavine Decl. ¶ 6.

As a result of his control of the Thorium Google Account and the DNS server, Mr. Nurmi has exclusive access to the documents and emails contained within the Thorium Google Account. On April 23, 2021, he informed Thorium that he had received a series of emails—the latest of which was dated 324 days earlier, on June 4, 2020—indicating that someone had been logging into Thorium accounts jbailey@thoriumcyber.com and drago@thoriumcyber.com. Lavine Decl., Ex. B. The email made no mention of spoliation and did not indicate that the Thorium Google Account had been or would be closed or deleted.

Defendant attached a zip file containing several emails and officially produced them on April 30, 2021. Lavine Decl., Ex. C. The zip file and subsequent production contained additional

emails, and the most recent message in the zip file and production—received by Defendant on October 19, 2020—was an email from Google stating that the Thorium Google Account had been "reactivated" following payment and was no longer slated for closure (but would be, if without payment or activity within the next 90 days). Lavine Decl., Ex. D. The zip file and production also included unrelated emails from Google through March 31, 2021. Lavine Decl., ¶ 7. Based on Defendant's allegations (which did not include statements about the possibility of deletion), the email stating the account had been reactivated and would continue to be active for at least ninety days, the production of emails from as late as March 31, 2021, and the lack of emails in that production suggesting that the account was nearing deletion, Thorium had no reason to believe that the Thorium Google Account would be closed or deleted. Lavine Decl., ¶ 10.

Instead, the parties continued to discuss the issue that had caused Defendant to bring the emails to Thorium's attention in the first place: Thorium's alleged access to the Thorium Google Account. On May 5, 2021, Thorium informed Defendant that its lack of access mooted any alleged "administrator status" it may have. Lavine Decl., Ex. E. The next day, acknowledging Thorium's inability to obtain the documents, Defendant suggested that Thorium issue a subpoena to Google and stated that both the "account data and meta-data are both likely to be material and relevant to the continuance of this case." Lavine Decl., Ex. F. Defendant ultimately issued a subpoena to Google—after being told on May 19th that Thorium would not issue a subpoena on behalf of Defendant—on June 2, 2021. Lavine Dec., Ex. G.

Unbeknownst to Thorium, Defendant began to receive closure and deletion warnings from Google in July of 2021—emails that only he received as a result of his control over the DNS. Lavine Decl., Ex. H. The emails informed Defendant in no uncertain terms that, unless action was taken, the Thorium Google Account would be closed and the data therein deleted on July 19, 2021. *Id*. Defendant did not share these emails—or alert Thorium of their contents—until July 21, 2021, when he emailed Thorium to say that the account had been "destroyed." Lavine Decl., Ex. I.

On August 24, 2021, Thorium met and conferred with Defendant on the issue. Thorium reiterated that Defendant's allegations of spoliation lacked merit in light of Thorium's lack of

access (and his failure to show that Mr. Bailey, and not Defendant himself, had been the person logging in under different thoriumcyber.com addresses) and Defendant's consistent and repeated assertions of ownership. Lavine Decl., ¶ 16. The parties then agreed that they had reached an impasse on the issue. Lavine Decl., Ex. J. One week later, on August 31, 2021, Defendant filed the Motion. On September 2, 2021, Thorium informed Defendant that the Motion was improper and asked him to withdraw the Motion and re-draft it as part of a joint statement. Lavine Decl., Ex. K. Defendant declined to do so.

## ARGUMENT

### I. Defendant's Motion Is Procedurally Improper Because It Does Not Comply With the Court's Standing Order

As a threshold matter, allegations of spoliation are a "discovery dispute". *See Wine Education Council v. Arizona Rangers*, 2021 WL 3550213 at *2 (D. Ariz. Aug. 11, 2021) (collecting cases and rejecting argument that "a motion for spoliation is not a discovery dispute"). As a result, the Court's Standing Order, and particularly Section 4 of that Standing Order, govern the process for bringing this dispute to the Court.

The Court's Standing Order provides an unequivocal guidelines for bringing discovery disputes. Parties are directed to meet and confer to resolve the dispute; if they reach an impasse, they are told to prepare a joint statement of five pages or less. Standing Order 4. The resulting statement should not contain exhibits other than the written requests for discovery at issue, and the answers or objections thereto. *Id*. Finally, if it is impossible for the parties to prepare a joint statement, they may each submit individual statements of two pages or less. *Id*.

Defendant is well aware of the Court's discovery dispute guidelines, and has made it clear to the Court and to Thorium that he does not intend to follow them. He has been reminded three times by the Court of the importance of the guidelines—once before he was allowed to proceed *pro se* and twice upon the striking of his previous motions—and Thorium twice raised them to Defendant upon his filing of an improper motion.

These warnings, requests, and admonitions have had no effect. Defendant's motion is not a joint statement, and he does not confine himself to two pages. He also makes no showing that a

1  joint statement was not possible, because it *was* possible:  Thorium asked Defendant to withdraw
2  and resubmit his motion as a joint statement.  Defendant refused.

3  Instead, he indulged himself with a motion that clearly exceeds the two pages allowed to
4  individual statements and is—yet again—full of slanderous allegations that even he
5  acknowledges are irrelevant.  *See* ECF. No. 87 at 3:11-14.  This is now the third time Defendant
6  has used an improper motion to disparage Thorium and its CEO, Mr. Bailey, rather than properly
7  address actual discovery issues in this case.  Indeed, Defendant has not pursued any of his
8  previously-struck discovery motions, strongly indicating that the purpose of those motions was
9  harm Thorium's and Mr. Bailey's reputations and not to raise an actual discovery dispute.

10 **II.     The Motion is Meritless Because Thorium Did Not Have Control Over the Google**
11 **        Account, Bears No Culpability for Its Closure or Alleged Deletion, and Defendant**
12 **        Has Suffered No Prejudice**

13  The Motion is meritless.  Even where, unlike Thorium here, a party has control over
14  evidence, the bare fact that such evidence may have been altered or destroyed does not mean that
15  a party has engaged in sanction-worthy spoliation.  Instead, a party seeking spoliation sanctions
16  "must establish (1) that the party having control over the evidence had an obligation to preserve it
17  at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and
18  (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable
19  trier of fact could find that it would support the claim or defense." *In re Napster, Inc. Copyright*
20  *Litig.*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006).  Terminating sanctions, for their part, are
21  authorized only as a "last resort," in "extreme circumstances" and "after willful and repeated
22  disobedience of discovery orders." *Bowoto v. Chevron Texaco Corp.*, 2008 WL 552456 at *1
23  (N.D. Cal. Feb. 27, 2008); *see also In re Napster*, 462 F. Supp. 2d at 1071 (collecting cases).

24  Thorium has not committed spoliation. At no point during the course of this litigation did
25  it have access to or control of the Thorium Google Account.  At no point until after the alleged
26  deletion of the Thorium Google Account was it even aware that deletion was threatened, because
27  Defendant alone had access to emails sent to @thoriumcyber.com email addresses.  Instead, it is
28  Defendant—who had access to and control over the account, who controlled the flow of emails to

and from the account, and who was aware of the impending closure and deletion and failed to act—who had notice and the ability to prevent the account's alleged deletion.

### A. Thorium Did Not Have Access to or Control Over the Thorium Google Account

There can be no viable spoliation claim unless the evidence in question existed and was in the possession or control of the alleged spoliator. *Brewer v. Quaker State Oil Refining Corp*., 72 F. 3d 326, 334 (3rd. Cir. 1995). The moving party—not the alleged spoliator—bears the burden of establishing the responding party's control over the evidence in question. *See McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 77 (D. D.C. 1999). Defendant fails to meet this burden.

Defendant makes no explicit arguments surrounding control and access. To the extent Thorium can read such arguments into Defendant's motion, they revolve around two factual allegations: (i) the aforementioned emails from Google, which show that someone accessed the account associated with jbailey@thoriumcyber.com; and (ii) a production of metadata from Google, which shows that the jbailey@thoriumcyber.com, drago@thoriumcyber.com, and damon.willard@thoriumcyber.com accounts had administrative access to the Thorium Google Account. From these two factual allegations, Defendant arrives at the conclusion that Thorium itself was accessing the account and that only Thorium could have prevented the closure and alleged deletion of the Thorium Google Account.

These arguments strain credulity. As Mr. Bailey confirms, and the documents show, Defendant locked Thorium out of the Thorium Google Account in July of 2019 and has never lifted that lock-out. Bailey Decl., ¶ 11; *see also* Bailey Decl., Ex. B. It is thus impossible for Mr. Bailey to access the Thorium Google Account. And, as a result, it is meaningless that those accounts had administrator status because Thorium was unable to log in to them in the first place. Defendant acknowledged as much when he asked Thorium to subpoena Google. Lavine Decl., Ex. F. Moreover, as Defendant admitted, administrator-level status is entirely unrelated to the ability to pay to maintain an account—which anyone with access can do—and so the fact that Defendant did *not* have an administrator-level account has no bearing on the question of

1  spoliation.  Lavine Decl., Ex. A.

2  On the other hand, Defendant has admitted that (i) he owned the Thorium Google account;
3  (ii) as Thorium's CTO, he possessed log-in information to the account, had changed that log-in
4  information at least once, had subsequently forgotten that log-in information, and had not tried to
5  regain it; (iii) he controlled and continues to control the Domain Name System (DNS) for
6  thoriumcyber.com ("DNS server"), which allowed and allows him to direct email sent to the
7  thoriumcyber.com addresses wherever he chooses; (iv) he directs all email sent to
8  thoriumcyber.com addresses to a separate mail server; and (v) he monitors emails directed to
9  thoriumcyber.com addresses.  Declaration of Michael Lavine ("Lavine Decl."), ¶ 2.  Defendant
10 has also, over the course of this litigation, produced emails sent to @thoriumcyber.com email
11 addresses.  *See*, *e.g.*, Lavine Decl., Ex. H (email sent to drago@thoriumcyber.com but produced
12 by Defendant).

13 In light of these admissions, a far more plausible explanation is that Defendant—who, as
14 CTO, held the account information for Thorium's employees and was demonstrably capable of
15 changing them at will—allowed the account to close, possibly because, as he has told Thorium
16 during meet and confers, another Google account associated with Ambitrace already contains all
17 of the documents that Thorium needed to operate as a business.  *See* Bailey Decl. ¶ 3 (stating that
18 Defendant's position as CTO came with the responsibility to maintain log-in information);
19 Lavine Decl., Ex. A (containing Defendant's admission).

20 This would also explain Defendant's inactivity in the face of Google's reminders that the
21 Thorium Google Account—an account which he insists that he owns and controls, and contains
22 relevant information—would be closed and deleted, as well as his delay in disclosing those
23 reminders to Thorium until the closure date had passed.  Instead, his only action was to issue an
24 eleventh-hour subpoena that, predictably, came too late.

25 **B.   Thorium Is Not Culpable for Any Loss of the Thorium Google Account**
26 **Because Defendant Did Not Disclose the Possibility**

27 Thorium bears no blame for the closure and alleged deletion of the Thorium Google
28 Account because it did not even know that the account was at risk of closure and deletion.

1  Sanctions for spoliation require "willfulness, fault, or bad faith." *In re Napster*, 462 F. Supp. 2d at
2  1074.  Neither willfulness, nor fault, nor bad faith exists on the part of Thorium.

3  As discussed extensively above, Defendant alone received the notices from Google.  He
4  never once raised the possibility of closure or deletion with Thorium.  Instead, his first
5  communication relating to the Thorium Google Account—the April 23, 2021 email—discussed
6  emails almost a year old and made only inaccurate allegations that Thorium was able to access
7  the Thorium Google Account.  Lavine Decl., Ex. B.  Defendant's second communication—the
8  April 30, 2021 production—contained emails more than six months old and indicated that the
9  Thorium Google Account would *not* be closed or deleted.  Lavine Decl., Ex. D.  Defendant's
10 third communication—the July 21, 2021 email—came after the alleged deletion of the account.
11 Lavine Decl., Ex. I.[3]

12 Because Thorium was never made aware of the possibility of closure or deletion before
13 they allegedly occurred—and because, in fact, the documents produced to Thorium indicated that
14 the account would *not* be closed or deleted—Thorium is not at fault for their alleged deletion, did
15 not act in bad faith in allowing them be destroyed, and certainly did not allow their destruction
16 willingly.  It therefore is not culpable for their destruction—if, in fact, they have even been
17 destroyed.

18 **C.     Defendant Has Suffered No Prejudice Because Defendant Has Access to**
19 **Relevant Documents and Contemporaneous Email Communications**

20 Prejudice is an "optional" consideration when determining whether sanctions are
21 appropriate.  *In re Napster*, 462 F.Supp.2d at 1075.  It becomes significant, however, when the
22 parties dispute the effect of alleged spoliation—and Thorium disputes the prejudice suffered by
23 Defendant as a result of the alleged deletion of the Thorium Google Account.  *Id*.  Additionally,
24 the *presumption* of prejudice—which attaches when the alleged spoliator is found to have acted
25 willfully—does not attach here, where Thorium had no knowledge of the spoliation until after it
26 allegedly occurred.  *Id*. at 1076.

27
28  [3] Nor did Defendant's first motion, ECF No. 76, contain any hint that the Thorium Google Account was subject to closure or deletion.

- 8 -   OPPOSITION TO MOTION FOR SANCTIONS
Case No. 3:19-cv-07669-WHO

1    Defendant alleges the destruction of "materials relating to Ambitrace Inc's [sic] acquisition of related properties," and then cites to the last page of his most recent production: screenshot of a Gust account for Thorium Cybersecurity, LLC.  ECF No. 87 at 5:7-8.

   It is not clear what Defendant means by "related properties" and by citing to the screenshot.  Nevertheless, as Defendant's defenses and claims revolve around ownership of what he labels "the Disputed Property Interests" (defined to mean the Github, Amazon Web Services, Google, and Hubspot accounts), Thorium assumes that Defendant is essentially referring to "materials relating to Ambitrace Inc.'s acquisition of [the Disputed Property Interests]."  ECF No. 64 at 19:23-28.  As a threshold matter, Thorium used the Thorium Google Account to store documents and as a platform to send and receive emails.  Bailey Decl., ¶ 4. Because Defendant has access to all of Thorium's deal-related documents, every other document deemed relevant to Thorium's operations, and all email communications sent during the period, he has suffered no prejudice.

   First, Defendant has the Thorium and Ambitrace deal documents.  In particular, Defendant produced the "Intellectual Property Sale Agreement" (NURMI000299, which purports to transfer all patents, trademarks, service marks, copyrights, documentation, domains and source code to Ambitrace, Inc.) and the "Thorium purchase motion" (NURMI000246, which purports to assign Thorium a 17% stake in Ambitrace, Inc. in return for Thorium's intellectual property).  These are the two documents allegedly effecting the only acquisition of intellectual property in Ambitrace, Inc.'s short history.

   Second, as Defendant admitted at a meet and confer, Thorium's documents had been migrated from the Thorium Google Account to an Ambitrace Google Account—which Defendant continues to control—and Defendant was saving Thorium documents in the Ambitrace account starting as early as October of 2018.  Lavine Decl., Ex. A.  Thorium also continued to move documents from the Thorium Google Account to the Ambitrace Google Account as necessary.  *Id*.  Defendant has been able to access these files using Google Takeout, which allows users to capture a "snapshot" of an account and all of the files in it, and to produce them over the course of the litigation.  Lavine Decl., Ex. A.

Finally, by the time of the alleged sale of Thorium's IP—November of 2018—the parties had switched to the Ambitrace Google account, and were sending and receiving messages using their @amibitrace.com email addresses. *See*, *e.g.*, Bailey Decl., Ex. C; Ex. D.  Defendant was also receiving corporate documents—*including those from Gust*—at his personal email accounts. *See*, *e.g.*, Bailey Decl., Ex. E; Ex. F.

As a result, Defendant has suffered no prejudice from Google's alleged deletion of the Thorium Google Account.  He has access to the deal documents, every document considered relevant to the functioning of Thorium as an operating concern, and email communications from the relevant period.  Moreover, Defendant has produced thousands of documents in this case that appear to have been pulled from a repository of Thorium documents.

## CONCLUSION

For the foregoing reasons, Thorium requests that the Court deny Defendant's motion.

Dated: September 14, 2021                         JONES DAY


By: /s/ *Michael A. Lavine*
   Michael A. Lavine

Attorneys for Plaintiff and Counterclaim Defendant THORIUM CYBER SECURITY, LLC